**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice to be filed*)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com
          sbeck@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILLORI GRAHAM, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>CENTRAL GARDEN & PET COMPANY,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Hillori Graham ("Plaintiff") brings this action on behalf of herself, and all others similarly situated against Defendant, Central Garden & Pet Company ("Defendant" or "Comfort Zone"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge:

## **NATURE OF THE ACTION**

1. This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to the marketing of its synthetic pet pheromone products, including products sold under the Comfort Zone brand (each a "Product" and collectively, the "Products").

2. Defendant promotes its Cat Calming Kit as a "trusted product" to "[p]romote[] a calming environment," and "[r]educe urine marking & scratching."

3. Defendant similarly promotes its Multi-Cat Calming Kit as a "trusted product" to "[u]se for tension and fighting," and to "[p]romote multi-cat harmony."

4. Defendant promotes its Calming Pheromone Collar as encouraging "positive behavior," and to use for "urine marking & scratching."

5. Defendant promotes its Spray & Scratch Control product as "proven to help: reduce urine marking, limit destructive scratching, and creat[ing] a calming environment."

6. In reality, the Products do not provide the purported benefits, as synthetic animal pheromones have not been proven to provide any calming or other behavior altering effects on cats. Accordingly, Defendant's advertising claiming the Products are trusted and/or proven to calm cats and prevent the aforementioned unwanted behaviors is likely to deceive the public.

7. Throughout the Class Period (defined below) Defendant manufactured, sold, and distributed the Products using a marketing and advertising campaign that is centered around claims that the Products are trusted and/or proven to reduce unwanted behaviors in cats, such as scratching and urine marking, or to promote multi-cat harmony. However, such claims are deceptive as the Products are not capable or proven to provide such benefits.

8. As a direct and proximate result of Defendant's false and misleading advertising

claims and marketing practices, Plaintiff and the members of the Classes, as defined herein, purchased the Products to calm their cats and/or eliminate unwanted, stress-related behaviors, for which the Products were not efficacious as they were marketed and advertised to be.

9.      Plaintiff seeks relief in this action individually, and on behalf of all purchasers of the Products for violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, breach of express warranty, breach of implied warranty of fitness and merchantability, and for unjust enrichment.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than the Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

11.      This Court has personal jurisdiction over Defendant because Defendant conducts substantial business and resides in this District.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Defendant resides in this District.

## PARTIES

13.      Plaintiff Hillori Graham is an individual consumer who, at all times material hereto, was a citizen of California residing in Humboldt County.

14.      Ms. Graham purchased Defendant's Cat Calming Kit, Multi-Cat Calming Kit, and Calming Pheromone Collar from Chewy and Amazon.  Plaintiff purchased the Products after reading Defendant's advertisements on the Products' labels representing that the Products are "trusted" to "reduce multi-cat conflict and destructive behavior," "anxiety and stress relief," and to "reduce scratching" and "urine marking."  She paid approximately $25 for Defendant's Calming Pheromone Collar, $40 for Defendant's Cat Calming Kit, $55 for refill cartridges, and $60 for

Defendant's Multi-Cat Calming Kit.

15.    Plaintiff relied on Defendant's false, misleading, and deceptive representations about the Products in making her decision to purchase the Products.  In reading Defendant's representations, she believed the Products would reduce tension and conflict as advertised, as well as providing calming and therapeutic benefits to reduce scratching and urine marking.  However, the Products did not work as advertised.

16.    Had Plaintiff known the truth—that the representations she relied upon in making her purchase were false, misleading, and deceptive—she would not have purchased the Products.

17.    Defendant, Central Garden & Pet Company, is a corporation with its principal place of business in Walnut Creek, California.  Defendant manufactures, markets, and advertises and distributes the Products under the Comfort Zone brand throughout the United States.  All manufacturing and advertising decisions are made at its principal place of business in California.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging and labeling for the Products.

## FACTUAL BACKGROUND

### The Pet Care Market

18.    As of 2019, Americans owned an estimated 85.8 million cats, with approximately 35% of American households owning a cat.[1]

19.    The pet care market is booming.  In 2020 the global market for pet care products was valued at $179.4 billion and is expected to reach $241.1 billion by 2026.[2]  The over-the-counter pet medication market alone is expected to reach $51.3 billion over the same period.[3]

20.    According to the ASPCA, the number one reason that cats are rehomed is due to "pet problems," which refers to, among other things, problematic and aggressive behaviors.[4]  It is

---

[11] *Pet Statistics*, ASPCA, https://www.aspca.org/helping-people-pets/shelter-intake-and-surrender/pet-statistics.

[2] Press Release, Global Industry Analytics, Inc., Global Pet Care Market to Reach $241.1 Billion by 2026 (Aug. 10, 2021) https://www.prnewswire.com/news-releases/global-pet-care-market-to-reach-241-1-billion-by-2026--301350916.html.

[3] *Id.*

[4] *Pet Statistics*, supra note 11.

not surprising, then, that consumers have sought out safe and effective remedies to address these pet behavioral problems.

**Defendant's Claims About the Products' Effectiveness are False and Misleading**

21.     As explained in detail below, Defendant makes numerous false and misleading representations regarding the Products.

**Cat Calming Kit**

22.     The Comfort Zone Cat Calming Kit is marketed as a "drug free" solution and "trusted product" for "[p]romt[ing] a calming environment."  The Product claims to be effective for reducing unwanted, stress-induced behaviors, such as urine marking and scratching.  The Product packaging also features the Comfort Zone slogan, "Less stress. More Love," as seen below:



23.     However, the Product is not effective for the advertised purposes.

**Multi-Cat Calming Kit**

24.     The Comfort Zone Multi-Cat Calming Kit is marketed as a "drug free" solution and "trusted product" to reduce "tension and fighting" in multi-cat households.  The Product claims to be effective for "promot[ing] multi-cat harmony" and features the Comfort Zone slogan, "Less

stress. More Love," as seen below:



25.     However, the Product is not effective at reducing tension and conflict between cats in multi-cat households as advertised.

**Calming Pheromone Collar**

26.     The Comfort Zone Calming Pheromone Collar is marketed as a "drug free" solution to "help[] your cats feel safe, happy, and relaxed while reducing unwanted behaviors."  Such unwanted behaviors include "urine marking" and "scratching."  The Product packaging also features the Comfort Zone slogan, "Less stress. More Love," as seen below:



27.     However, the Product is not effective for the advertised purposes.

**Spray & Scratch Control**

28.     The Comfort Zone Spray & Scratch Control Product claims to be "proven to help: reduce urine marking, limit destructive scratching, [and] create a calming environment."

1
2
3
4
5
6
7
8
9
10
11
12
13



14

15    29.    However, the Product is not effective for the advertised purposes.

16    **Defendant's Products Are Not Capable Of Working As Advertised**

17    30.    The active ingredient for the Products is a synthetic cat pheromone.  According to

18  Defendant, this synthetic pheromone is designed to "mimic the cat facial pheromone that signals a

19  safe, familiar territory."[5]  Defendant claims that releasing such a pheromone will reduce stress-

20  induced behaviors, such as urine marking and/or scratching.

21    31.    However, such synthetic pheromones have not been proven to provide such

22  benefits.  In fact, a comprehensive review of studies addressing the effectiveness of synthetic

23  pheromones to alter the stress-induced behavior of cats found that "the effectiveness of

24  pheromones in dogs and cats on fear behavior could not be demonstrated in the majority studies

25  due to the lack of adherence to scientific quality criteria."[6]

26    32.    For example, one study comparing cats who were exposed to synthetic feline facial

27  _____
[5] https://www.comfortzone.com/behavior-blog/pheromones/what-are-cat-pheromones.
28  [6] S. Riemer, et al., *A Review on Mitigating Fear and Aggression in Dogs and Cats in a Veterinary Setting*, 11 ANIMALS 158 (2021).

pheromones to those exposed to a placebo, found there is "no significant difference between cats exposed to the pheromone diffuser and those exposed to the placebo diffuser."[7]

33.     Another randomized, double-blind placebo-controlled study examined the effect of synthetic facial pheromones on cats in the home and during veterinary visits.  The study found no differences in the physiological responses or in the instance of stress-related behaviors (such as vocalization, struggling, and agitation) of cats who were exposed to the synthetic facial pheromone as compared to those exposed to a placebo.  As a result, the researchers concluded that "exposure to [synthetic feline facial pheromone] does not reduce physiologic and behavioral changes caused by stress."[8]

34.     Defendant should be aware of such findings, as pet behavioral experts have explained "[f]or behavior, there's not a magic pill or a magic shot that will solve all your problems."[9]

35.     That is because, to the extent the Products are capable of providing any therapeutic benefit, "[s]ynthetic pheromone products are often suggested as "*adjunctive intervention*," rather than the miracle cure the Products portray themselves to be.[10] (emphasis added).

36.     Nowhere on the Products' packaging does it implore consumers to use the Products in conjunction with other stress-reducing treatment.

37.     Instead, such recommendations can be found couched away in the FAQ section of Defendant's website[11]:

---

[7] Chadwin, et al., *Effect of a Synthetic Feline Facial Pheromone Product on Stress Scores and Incidence of Upper Respiratory Tract Infection in Shelter Cats*, JOURNAL OF AMERICAN VETERINARY MEDICAL ASSOCIATION, Aug. 15, 2017, at 418.
[8] Conti, et al., *Evaluation of Environment and A Feline Facial Pheromone Analogue on Physiologic and Behavioral Measures in Cats*, 19(2) JOURNAL OF FELINE MEDICINE AND SURGERY, 165-170 at 170 (2017).
[9] Andrea Sachs, *Kitty Prozac: Can Synthetic Pheromones Calm Your Pet?* Time Magazine (Dec. 3, 2010), http://content.time.com/time/magazine/article/0,9171,2029480,00.html.
[10] S. Riemer, et al., *A Review on Mitigating Fear and Aggression in Dogs and Cats in a Veterinary Setting*, 11 ANIMALS 158 (2021).
[11] https://www.comfortzone.com/behavior-blog/pheromones/what-are-cat-pheromones.

---

It can take a few days to a few weeks before you notice your cat acting more calmly, so employ other calming techniques as well. These can include giving your cat a window perch to watch the outside world, setting up a cat tree or condo so your cat has his own "territory," or extending playtime with your cat to expend some of that pent-up energy.

38.     However, such a disclaimer is woefully inadequate as it does not appear on the Product packaging and does not alert consumers as to the ineffectiveness of the Comfort Zone Products.

39.     Comfort Zone Products are not effective at treating stress or stress-induced behaviors in cats.

<u>**CLASS ALLEGATIONS**</u>

40.     Plaintiff brings this matter on behalf of herself and those similarly situated.  Plaintiff seeks to represent a class defined as all persons who purchased the Comfort Zone Products four years prior to the filing of this lawsuit through the date class notice is disseminated (the "Class Period") anywhere in the United States (the "Class").

41.     Plaintiff also seeks to represent a class defined as all persons who purchased the Comfort Zone Products during the Class Period in the State of California (the "California Subclass").

42.     As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

43.     The Classes are properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

44.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

45.     <u>Commonality</u>: The questions of law and fact common to the Class Members which

predominate over any questions which may affect individual Class Members include, but are not limited to:

    (a)  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    (b)  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

    (c)  Whether Defendant made false and/or misleading statements concerning the Products were likely to deceive the public;

    (d)  Whether Plaintiff and the Classes are entitled to injunctive relief;

    (e)  Whether Plaintiff and the Classes are entitled to money damages under the same causes of action as the other Class Members.

46.    <u>Typicality</u>: Plaintiff is a member of the Classes.  Plaintiff's claims are typical of the claims of each Class and Subclass Member in that every member of the Classes was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

47.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all other members of the Classes and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and she intends to vigorously prosecute this action.  Plaintiff has no interest which conflicts with those of the Classes.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.  Defendant has acted in a manner generally applicable to the Classes, making relief appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

48.    The Classes are properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior to traditional litigation of this controversy.  Pursuant

to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Classes. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices. In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*:

49.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

(a) The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(b) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—it not totally impossible—to justify individual actions;

(c) When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

(d) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

(e) Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

(f) This class action will assure uniformity of decisions among Class Members;

(g) The Classes are readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

(h) Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

and

(i) It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase the Products.

50.     Accordingly, the Classes are properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

<u>COUNT I</u>
**Violation of Consumer Legal Remedies Act
("CLRA") Civil Code §§ 1750,** *et seq.*

51.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

52.     Plaintiff brings this claim individually, and on behalf of the Class and California Subclass against Defendant.

53.     This cause of action is brought pursuant to California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

54.     Plaintiff, as well as members of the Class and California Subclass, are consumers who purchased the Products for personal, family, or household purposes.  Accordingly, Plaintiff and members of the Class and California Subclass are "consumers," as the term is defined by Cal. Civ Code § 1761(d).

55.     At all relevant times, Defendant's Products constituted "goods," as that term is defined in Civ. Code § 1761(a).

56.     At all relevant times, Defendant was a "person," as that term is defined in Civ. Code § 1761(c).

57.     At all relevant times, Plaintiff's purchases of Defendant's Products, and the

purchases of other Class and California Subclass members constituted "transactions," as that term is defined in Civ. Code § 1761(e).

58.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

59.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Products to Plaintiff and the Class and California Subclass. Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

60.     Defendant represented that its Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of California Civil Code § 1770(a)(5).  Defendant violated this provision by representing that its Products were "trusted," and/or "proven" to reduce stress-related behaviors such as "scratching" and "urine marking," and its Multi-Cat Calming Kits were "trusted" to "use for tension and fighting," and to "promote multi-cat harmony," as described above.

61.     Defendant represented that its Products were of a particular standard, quality, and grade, when they were another, in violation of California Civil Code § 1770(a)(7).

62.     Defendant violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that its Products were safe and effective to provide stress relief and to reduce stress induced behavior in cats, when in fact they were not.

63.     Defendant advertised its Products with intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.  Defendant intended to not sell the Products as effective

products, because it knows those products contain ingredients that are not proven to work as advertised.

64. Plaintiff and members of the Class and California Subclass suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiff and members of the Class and California Subclass would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiff and members of the Class and California Subclass paid a premium price due to the mislabeling of Defendant's Products; and (c) Defendant's Products did not have the level quality, effectiveness, or value as promised.

65. Prior to the filing of this Complaint, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  On November 12, 2021, Plaintiff sent Defendant a letter via certified mail, return receipt requested, advising Defendant that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.  (Attached as **Exhibit A**).  Wherefore, Plaintiff seeks damages, restitution, and injunctive relief for this violation of the CLRA.

**<u>COUNT II</u>**
**Violation of False Advertising Law,**
**Business & Professional Code §§ 17500, *et seq.***

66. Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

67. Plaintiff brings this claim individually, and on behalf of the members of the Class and California Subclass against Defendant.

68. California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,…in any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning…personal property or services, professional or otherwise, or

performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

69.    Throughout the Class Period, Defendant committed acts of false advertising, as defined by § 17500, by using false and misleading statements to promote the sale of the Products, as described above, including but not limited to, representing that the Products were "trusted," and/or "proven" to reduce stress-related behaviors such as "scratching" and "urine marking," and its Multi-Cat Calming Kits were "trusted" to "use for tension and fighting," when in fact they were not.

70.    Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

71.    Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

72.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class and California Subclass have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class and California Subclass would not have purchased the Products if they had known the true facts regarding the effectiveness of the Products; (b) Plaintiff and members of the Class and California Subclass paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

73.    Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers.  Plaintiff and members of the Class and California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

**COUNT III**
**Violation of Unfair Competition Law,**
**Business & Professional Code §§ 17200, *et seq.***

74.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

75.     Plaintiff brings this claim individually, and on behalf of members of the Class and California Subclass against Defendant.

76.      Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for violations.

77.     "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

78.     Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342,1383 (2012).

79.     Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA and FAL, as well as by breaching express and implied warranties as described herein.

80.     Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by using false and misleading statements to promote the sale of the Products, including that the Products were "trusted," and/or "proven" to help reduce stress-related behaviors such as "scratching" and "urine marking," and its Multi-Cat Calming Kits were "trusted" to "use for tension and fighting," and to "promote multi-cat harmony," as described above.

81.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the

conduct outweighs any alleged benefits.  Defendant's conduct is unfair in that the harm to Plaintiff and members of the Class and California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

82.     Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Products will provide stress relief and reduce stress induced behavior in cats.  Defendant's practice of injecting misinformation into the marketplace about the capabilities of its Products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about products for cats.  Taking advantage of that trust, Defendant misrepresents the effectiveness of its Products to increase its sales.  Consumers believe that Defendant is an authority on the effectiveness and quality of stress reducing products for their cats and therefore believe Defendant's representations that its Products can magically provide stress relief and reduce stress induced behavior in cats.

83.     Defendant's conduct described herein, violated the "fraudulent" prong of the UCL by representing that the Products were effective at providing relief related to certain unwanted, stress induced behavioral problems in cats, as described above, when in fact they were not.

84.     Plaintiff and members of the Class and California Subclass are not sophisticated experts with independent knowledge of the formulations or efficacy of pet products, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

85.     Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

86.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class and California Subclass have suffered injury and actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiff and members of the Class and California Subclass would not have purchased the Products on the same terms if they had known the true facts regarding the effectiveness and contents of the Products; (b) Plaintiff and members of the Class and California

Subclass paid a price premium due to the misrepresentations of Defendant's Products; and (c) Defendant's Products did not have the quality and effectiveness or value as promised.

87.     Pursuant to *California Business & Professions Code §17*203, Plaintiff and the members of the Class and California Subclass are therefore entitled to: (a) an Order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## COUNT IV
### Breach of Express Warranty

88.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

89.     Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

90.     As the designer, manufacturer, marketer, distributer, and/or seller, Defendant expressly warranted that its Products were effective and would provide relief for certain unwanted, stress induced behaviors in cats, as described herein, including that the Products were "trusted," and/or "proven" to help reduce stress-related behaviors such as "scratching" and "urine marking," and its Multi-Cat Calming Kits were "trusted" to "use for tension and fighting," and to "promote multi-cat harmony," as described above.

91.     Defendant's affirmations of fact and promise made to Plaintiff and members of the Class and California Subclass on the Products' labels and in online advertising, became part of the basis of the bargain between Defendant on the one hand, and Plaintiff and Class and Subclass members on the other, thereby creating express warranties that the Products would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

92.     However, clinical studies show that the Products are not effective and cannot provide any appreciable relief to consumers.

93.     As such, Defendant breached this warranty because the Products are not effective as

advertised.  In short, the Products do not perform as expressly warranted.

94.     Plaintiff and members of the Class and California Subclass were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Products on the same terms if they had known the true facts; (b) they paid a price premium due to the mislabeling of the Products; and (c) the Products did not have the quality, effectiveness or value as promised.

95.     On or about November 12, 2021, prior to filing this action a pre-suit notice letter was served on Defendant which complied in all respects with U.C.C. § 2-607.  Plaintiff and the members of the Class and California Subclass sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it breached numerous warranties and violated state consumer protection laws, and demanded that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's letter is attached hereto as **Exhibit A**.

## <u>COUNT V</u>
### Breach of Implied Warranty of Fitness for a Particular Purpose

96.     Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

97.     Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

98.     Defendant, through their acts and omissions set forth herein, in their sale, marketing, and promotion of the Products made implied representations to Plaintiff and the members of the Class and California Subclass that the Products were safe and effective for providing relief related to certain unwanted, stress induced behaviors in cats, as described above, including that the Products were "trusted," and/or "proven" to reduce stress-related behaviors such as "scratching" and "urine marking," and its Multi-Cat Calming Kits were "trusted" to "use for tension and fighting," and to "promote multi-cat harmony," as described above.  However, the Products are not capable of providing the aforementioned benefits.  At the time the Products were sold, Defendant

knew or should have known that Plaintiff and members of the Class and California Subclass would rely on Defendant's skill and judgment regarding the efficacy of the Products.

99.     In reliance on Defendant's skill and judgment and the implied warranties of fitness for this purpose, Plaintiff and members of the Class and California Subclass purchased the Products for use to provide relief related to certain unwanted, stress induced behavior in their cats.

100.    The Products were not altered by Plaintiff or Class or Subclass members.

101.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiff and Class members.

102.    Defendant breached their implied warranties because the Products were not effective and as a result of Defendant's conduct, Plaintiff and members of the Class California Subclass did not receive goods as impliedly warranted by Defendant to be  fit for the purpose they were sold.

103.    Plaintiff and members of the Class and California Subclass have sustained damages as a proximate result of the foregoing breach because: (a) they would not have purchased the Products if the true facts concerning their efficacy had been known; (b) they paid a price premium for the Products based on Defendant's representations regarding the Products' efficacy; and (c) the Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff and members of the Class California Subclass have been damaged.

**COUNT VI**
**Unjust Enrichment**

104.    Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

105.    Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

106.    "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of

each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig*., 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

107.    Plaintiff and Class and Subclass members conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

108.    Defendant has knowledge of such benefits.

109.    Defendant has been unjustly enriched in retaining the revenues derived from Class and Subclass members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that its Products would provide relief for certain unwanted, stress induced behaviors in cats, as described above, when in fact they do not. These misrepresentations cause injuries to Plaintiff and Class and Subclass members, because they would not have purchased the Products if the true facts regarding the effectiveness of the Products were known.

110.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class and Subclass members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes and California Subclass, pray for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representatives of the Class and California Subclass under Rule 23 of the FRCP, and Plaintiff's attorneys as Class Counsel to represent the Class, and California Subclass members;

(b)    Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct their practices and to comply with consumer protection statutes

nationwide;

(c)   Awarding monetary damages, including treble damages

(d)   Awarding punitive damages;

(e)   Awarding Plaintiff and Class and Subclass Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f)   Granting such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated:  October 25, 2022                              Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*Sarah N. Westcot*_____

Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice to be filed*)
Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email: swestcot@bursor.com
            sbeck@bursor.com

*Attorneys for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Sarah Westcot, declare as follows:

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because Defendants because many of the acts and transactions giving rise to this action occurred in this District, and because Defendants reside in this District.

3.      Plaintiff Hillori Graham is a resident of Samoa, California.

4.      Defendant Central Garden & Pet Company is a Delaware corporation with its principal places of business located at 1340 Treat Boulevard, Suite 600, Walnut Creek, California 94597.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on October 25, 2022, at Miami, Florida.


                                          */s/ Sarah Westcot*
                                          Sarah N. Westcot

**EXHIBIT A**

# BURSOR & FISHER
### P.A.

701 BRICKELL AVE.
SUITE 1420
MIAMI, FL 33131
www.bursor.com

SARAH N. WESTCOT
Tel:  305.330.5512
Fax: 305.679.9006
swestcot@bursor.com

November 12, 2021

_**Via Certified Mail - Return Receipt Requested**_

Central Garden & Pet Company
1340 Treat Blvd., Ste. 600
Walnut Creek, CA 94597

> _Re: Notice and Demand for Corrective Action Related to Labeling and Sale of Comfort Zone Pet Products_

To Whom It May Concern:

This letter serves as a notice and demand for corrective action by Central Garden & Pet Company ("Defendants" or "You") arising from breaches of express and implied warranties on behalf of our client, Hillori Graham and a class of all similarly situated purchasers of synthetic pet pheromone diffuser products. This letter further serves as notice of violations of all applicable consumer protection laws, including, but not limited to, California Business & Professions Code §§ 17200 & 17500, et seq, and California Civil Code §§ 1750, et seq.

## I. LABELING, MARKETING, AND SALE OF THE PRODUCTS VIOLATES CALIFORNIA LAW

You have participated in the marketing and sale of Comfort Zone synthetic pet pheromone diffuser products, including Comfort Zone Calming Diffuser, Comfort Zone Multi-Cat Diffuser, and Comfort Zone Calming Collar (the "Products"). Your labeling and advertisements claim that the Products utilize "pheromone technology" to "calm your cat and reduce destructive behaviors." In reality, none of the Products provide the advertised relief.

Ms. Graham purchased Comfort Zone Multi-Cat Diffusers in reliance on Your representations that the Product utilized "pheromone technology" to "reduce multi-cat conflict and destructive behavior." This includes "tension and fighting," "urine marking," and destructive scratching." Ms. Graham used the Product as directed but the Product did not provide the advertised relief. Had Ms. Graham known the truth about the Product's ineffectiveness, she would not have purchased the Product.

The other Products in the Comfort Zone line purport to provide the same benefits related to calming effects, including the Calming Diffuser Kit and the Calming Pheromone Collar.

Ms. Graham is acting on behalf of a class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased the Products. Ms. Graham is

also acting on behalf of a subclass defined as all members of the Class who purchased the Products in California.

## II.    DEMAND FOR CORRECTIVE ACTION

Plaintiff demands that You take corrective action to cure the defects described above. Specifically, Plaintiff demands that you:

1.  Permanently cease and desist from further sales of the Products;

2.  Issue an immediate recall of the Products; and

3.  Make full restitution to all purchasers of the Products of all purchase money obtained from sales thereof.

## III.    DEMAND TO PRESERVE DATA AND DOCUMENTS

In accordance with California and Federal law, Plaintiff furthers demand that You preserve all documents (including electronic data), and other evidence which refers or relates to any of the practices described herein, including but not limited to the following categories of documents:

1.    All documents concerning the formulation, development, and testing of the Products;

2.    All documents concerning the labeling, advertisement, and marketing of the Products;

3.    All documents concerning communications with customers or former customers concerning complaints related to the Products;

4.    All documents regarding all consumer perception testing (and related data) of advertising, marketing, and labeling of the Products;

5.    All documents concerning sales of the Products, including the total number of units sold and the total revenue generated therefrom; and

6.    All documents concerning the identities of Class members who purchased the Products.

## IV.    NEXT STEPS

If You have a legitimate interest in discussing a resolution of these issues, including ways that You can appropriately modify labeling and promotion of the Products, please contact me (305) 330-5512 or swestcot@bursor.com within 30 days of receipt of this letter.  If we do not hear from you, we will assume You have no interest in attempting to resolve this matter short of litigation and we will proceed accordingly.

BURSOR&FISHER
P.A.

Very truly yours,

Sarah N. Westcot